On Rehearing.
GLADNEY, Judge.
A rehearing was granted in this cause so that we might give further consideration to the evidence supporting plaintiff’s right to be maintained and quieted in possession of the property in question. The effect of our former judgment was to reverse a decision of the trial court which had rejected plaintiff’s demands for failure to establish his case by a preponderance of the evidence.
Counsel for the appellee, the applicant for rehearing, earnestly insist we com *545 mitted error in the following respects: (1) in that we assumed plaintiff’s possession and considered only the character thereof, whereas the defendant denied any and all possession by plaintiff of the tract in controversy; (2) in holding plaintiff’s acquisition by deed included the property involved and claimed by the defendant; (3) in disregarding the established legal principles that in a possessory action possession of a portion of the land extends to the boundary set out in the title deed, but where a plaintiff contends his possession of a part of the land is a possession of the whole, he must show definite boundaries; (4) in holding that plaintiff enclosed by fence the tract in controversy and tied his fence into an existing fence on the west side of the property; and (5) in our consideration of certain testimony, particularly that of witness McGuire.
The claim of Bayles to ownership is described in his deed dated February 7, 1946, from the Ouachita Realty & Development Company, Inc., as:
“A lot in Trenton, fronting on the south side of Claiborne Street, bounded west by Cypress Brake, east by Crane, and south by Register.”
Certain plats or maps attached to the record disclose that Claiborne Street, which runs east and west, is a deadend street and does not extend west of North Fifth Street. The property claimed by Bayles includes a large portion of Lot 29 of the Garlington addition to Trenton. Lot 27 of the same addition was owned by Crane, and its west boundary constituted the east line of Lot 29. Bayles’ west line or boundary is fixed by the Cypress Brake and runs generally north and south. Although we have been unable to discern the precise location of said line, it crosses the south line of the tract claimed by Bayles at a point approximately one hundred feet west of North Fifth Street, and then runs northerly to some extent parallel to said street. The property allegedly disturbed by McGuffie lies wholly west of North Fifth Street. It is pertinent to observe, therefore, that plaintiff cannot claim title to or possession of any property beyond his west line.
The foregoing remarks are not made for the purpose of involving a question of boundaries, but rather for demonstrating that our former decree recognizes and quiets plaintiff in the possession of property beyond the description contained in his deed of title. As aforementioned, we confess we are unable to determine from the existing data the exact location of the western boundary of the property claimed by Bayles, but this is not of paramount significance in the determination of the case.
We find the crucial issue to be whether or not plaintiff, after acquiring the property, completely enclosed a portion of it by a fence or fences in such a manner as to reduce the enclosed area to his physical possession. This is the same issue considered by the trial court which resolved it in favor of the defendant, and by this court on appeal, whereupon we held to the contrary. The issue is essentially factual and in arriving at our decision we must observe that the onus is placed upon the plaintiff to establish by a preponderance of the evidence the existence of fence lines constituting the enclosure by which he reduced the subject property to possession. Millard v. Richard, 1858, 13 La.Ann. 572; Buckley v. Dumond, La.App. 1st Cir. 1934, 156 So. 784; Acosta v. Nunez, La.App. Orleans, 1942, 5 So.2d 574; Bossier Enterprises, Inc. v. Carbone, La.App.2d Cir., 1953, 66 So.2d 521; and Wright v. Holder, La.App.2d Cir. 1954, 72 So.2d 529.
Our opinion under review was influenced largely by the testimony of Bayles and Williams that some time during 1948 plaintiff constructed a fence in an east and west direction along the north side of his property to the drainage canal situated approximately three hundred fifty feet west of the west line of Lot 29, and that he also erected a similar parallel fence along the south line. Bayles testified that these two fences were tied into an existing fence running *546 along the east bank of the drainage canal. Both witnesses testified the fences were constructed with new oak posts set ten feet apart with three strands of barbed wire. Such new fences would, therefore, have required more than seventy oak posts and two thousand feet or more of barbed wire. Bayles, Williams and other witnesses originally testified that said fences were built during the year 1946. This was subsequently corrected when it was established the canal was not dug until some two years later, at which time no fences were found by the constructors of said canal. Although we may concede an error of date is not improbable after the lapse of so many years, certain declarations made by plaintiff’s witnesses upon the first trial nonetheless bring into question their credibility.
In addition to an affirmative showing upon the second trial that the canal was not constructed until 1948, plaintiff’s witnesses aforesaid are also contradicted by credible testimony as to the existence of a fence along the east bank of the drainage canal. A. P. Andrews, an engineer with the State Department of Public Works whom we believe to be entirely disinterested, testified that in March of 1947, he personally surveyed the area of the canal including the tract of land in controversy and there was no existing fence along the east bank of the drainage canal. The existence of such a fence along the east bank of the canal is further negated by the testimony of L. M. Ray, Z. E. Black, Joe Staton, Vaughan T. Watson and Manning McGuire.
Z. E. Black further testified that he had operated the bulldozer which cleared the tract in July of 1958, and had found no evidence of fences other than a very old north and south fence some twenty-five to thirty feet west of North Fifth Street. Black’s absolute denial that he could have unknowingly bulldozed over some seventy oak posts and 2,000 feet of barbed wire was corroborated by the testimony of Ray, Wink, Antony and Brown, all experienced bulldozer operators.
The north and south fence referred to by Black was, in all probability, the same fence found by Andrews while examining the property preparatory to effecting his survey. Andrews located a north and south fence crossing the property approximately one hundred fifty feet east of the drainage canal. The fence was identified by McGuire as the Gallaspy and McCormick fence, which McGuire stated he helped erect in 1946, and later pastured cattle to the west thereof. Another fence was encountered by Andrews running generally in an east and west direction, but intersecting the Gallaspy and McCormick fence near the south line of the property herein involved, from which intersection it. extended approximately two hundred feet westerly and thereafter proceeded south. It enclosed a very small segment of the property herein involved.
Pursuant to plaintiff’s request, J. M. Norris, a surveyor, prepared a plat in September of 1958 that was in accord with specific directions from Bayles and which purports to show the property claimed by Bayles. Norris found evidence indicating that a north and south fence had previously existed a short distance west of the east line of Lot 29. He also found evidence of an east and west fence running from the intersection of Bayles’ southern boundary with the west edge of North Fifth Street and extending westerly along said southern boundary to the toe of a cypress brake. Norris further testified that the high bank of said cypress brake was within ten to fifteen feet of North Fifth Street.
We think our original opinion misinterpreted the effect of certain letters which were written to Bayles in the spring of 1949 by the attorney for Manning McGuire, upon the latter’s discovering that a fence had been erected by Bayles on Lot 29 of the Williamson-Garlington Addition, known as the Sylvia Brown Lot, the ownership of which McGuire claimed. McGuire testified :
“Q. .Can you tell me when Mr. Bay-les put that fence there or do you *547 know? A. No,' sir, I don’t know. I know when I found it.
“Q. Did he move his fence? A. It went down. I don’t know who moved it.
“Q. When? A. Within a year or so. They rebuilt one there last year.
Jjc sit * * * *
“Q. And you were not complaining about any fence west of the gravel street at that time? A. No, sir.”
It is our conclusion that the evidence preponderates against the existence of a fence along the east bank of the drainage canal, despite plaintiff’s averments to the contrary. Nor do we believe that Z. E. Black, the bulldozer operator, could have unknowingly destroyed the remnants of east and west fences constructed in the manner described by Bayles. Such fences as did exist on the tract claimed by Bayles are explained to our satisfaction. The Gallaspy and McCormick fence to the west of North Fifth Street and the fence to which McGuire objected on the east of North Fifth Street have doubtless caused some confusion to the witnesses testifying herein. However, we are convinced that testimony relative to those fences is wholly inadequate for the purpose of establishing the existence of an enclosure of the property as contended for by Bayles.
As pointed out by our brother of the trial court, it is impossible to reconcile the testimony of the witnesses. Our reconsideration has caused us to painstakingly review and weigh, so far as possible, the testimony of each and every witness who testified in the case. We have arrived at the conclusion the trial judge was in a much better position than any member of this court to evaluate the testimony of the several witnesses, and that our former judgment was in error. We are convinced that plaintiff has not sustained the burden of proof with which he is burdened, and that he has failed to disclose manifest error in the judgment of which he complains.
Accordingly, our original decree herein is recalled and vacated and the judgment of the Fourth District Court of Ouachita Parish, rendered September 26, 1960, is affirmed and made the judgment of this court, plaintiff-appellant to be taxed with costs of this appeal.